## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **United States of America** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No.  1:24-CR-311-ELH** |
| | : | |
| **James Edward Howeth** | : | |
| | : | |
| **Defendant** | : | |

## MOTION TO SUPPRESS AND REQUEST FOR A *FRANKS* HEARING

### Introduction

James Howeth moves to suppress all tangible and physical evidence
stemming from the search of his home on March 14, 2023. That search was
conducted by members of the Maryland State Police pursuant to a search warrant
signed by a Dorchester County Circuit Court judge. That state search warrant was
defective for three primary reasons.

First, to comply with the Fourth Amendment, a search warrant affidavit
must establish a nexus between the location to be searched and the suspected
criminal activity. The affidavit in this case fails to do so. While it purports to
establish ***a connection*** between Mr. Howeth and Ann Curl – the primary
individual being investigated as the potential source of the child pornography
allegations in this case – it failed to establish ***the required nexus*** between that
suspected criminal activity and Mr. Howeth's residence. As a result, the search
warrant does not establish probable cause to search Mr. Howeth's residence,
rendering the search unconstitutional.

1

Second, the search warrant affidavit omits material facts that, either intentionally or, at the very least, with reckless disregard about whether it would mislead the Dorchester County Circuit Court judge, resulted in the issuance of a search warrant for Mr. Howeth's residence. Specifically, the search warrant affidavit omitted (1) that Sgt. Antal identified Ann Curl as the source of the child pornography uploaded to the Verizon Synchronoss cloud, and (2) her residential address information. Instead of providing Ann Curl's residential address information, the affidavit intentionally, or with reckless disregard about whether it would mislead the judge into believing that Ann Curl resided at Mr. Howeth's residence. If this information was included in the search warrant affidavit, it would have defeated any probable cause to search Mr. Howeth's residence. As a result, the search warrant is void and the fruits of the search must be suppressed.

Third, the search warrant fails to satisfy the particularity requirement of the Fourth Amendment. It seemingly provided law enforcement with the unfettered discretion to conduct a "preview" and "analyze" electronic devices found at the residence. The search warrant does not place any limits on the scope or nature of any such search, including no limits on any methodology or forensic tools that may be used in the process. The search warrant effectively authorized the same "wide-ranging" and "exploratory rummaging" that the Fourth Amendment prohibits. *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

For these reasons, the Court should suppress all tangible and physical evidence stemming from the execution of the search warrant for Mr. Howeth's home.

## Factual Background

**A. Law enforcement received information that the user of phone number ▮▮▮▮▮▮▮▮ uploaded suspected child pornography to a Verizon Synchronoss Technologies account.**

On September 15, 2023, the National Center for Missing and Exploited Children ("NCMEC") received a Cybertip from Verizon Synchronoss Technologies, Inc, reporting one image of apparent child pornography that was uploaded to the account utilizing phone number ▮▮▮▮▮▮▮▮[1] The email address ▮▮▮▮▮▮▮▮ was also associated with the Cybertip report. Utilizing a phone number geo-lookup, the Cybertip identified a suspect – Ann Curl, and listed her address as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

| Phone Number Geo-Lookup (Suspect) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Phone Number | Queried Number | First Name | Last Name | Address | City | State | Postal Code | Carrier | Phone Type |
| ▮▮▮ | ▮▮▮ | ANN | CURL | ▮▮▮ | ▮▮▮ | ▮ | ▮▮ | Verizon Wireless | Wireless |

The Cybertip report was referred to the Maryland State Police ("MSP"), who obtained a subpoena for records to the Verizon account information relating to ▮▮▮ ▮▮▮. Based on the information contained in the NCMEC Cybertip, MSP

---

[1] Exhibit A (NCMEC Cybertip).

obtained a search and seizure warrant for the Synchronoss Technologies, Inc. account for phone number ██████████.[2]

**B. Law enforcement identified Ann Curl as the user of cell phone number ██████████, and suspected her as being the source of the child pornography upload to the Synchronoss cloud.**

On November 29, 2023, Seargent Antal of the MSP submitted an application for a search and seizure warrant for information related to Synchronoss Technologies, Inc., account for phone number ██████████. The search warrant specifically sought all subscriber information including, but not limited to, picture, videos, documents, and text messages; and all cloud associated with Cybertip number 174159863 and Verizon Cloud account number ██████████.

In support of the application for the search warrant, Sgt. Antal stated the following:

- On October 23, 2023, Your ***AFFIANT*** from the Maryland State Police Criminal Enforcement Division Eastern Region (CEDER) was assigned a NCMEC (National Center for Missing and Exploited Children) cybertip number 174159826 for investigation. The cybertip was submitted by the online social media provider Synchronoss Technologies, Inc.

- Synchronoss Technologies, Inc reported on September 15, 2023 at 21:06:11 UTC, a user of their platform uploaded 1 image of child pornography to their network. Your ***AFFIANT*** viewed the images and confirmed them to be child pornography

- Synchronoss Technologies, Inc provided a phone number, ██████ ██, for the use of the upload. The telephone number comes back to Verizon Wireless as the service provider. A subpoena was issued to Verizon to better identify the target.

---

[2] Exhibit C (Search Warrant for Synchronoss Technologies, Inc. Account).

- Through Your **AFFIANT's** training, knowledge, and experience it is known that during the commission of the aforementioned crime(s) cellular devices, and other electronic devices, are often used to communicate the planning, execution, and concealment of criminal activity including the cloud and apps including but not limited to **Synchronoss Technologies, Inc**.[3]

The search and seizure warrant was approved by Dorchester County Circuit Court Judge William Jones.

Pursuant to the search warrant, Sgt. Antal was able to view the contents of the Verizon Synchronoss Technologies account for phone number ███████████, including a picture of a Maryland State driver's license with information relating to Ann Margret Curl. [4] As noted above, the NCMEC Cybertip had also identified Ann Curl as the user of phone number ██████████.[5] The contents of the Ann Curl's Verizon Synchronoss Technologies account also showed: (1) a picture depicting a brown and black dog performing oral sex on a human female; (2) a picture depicting a brown and black dog sitting in a vehicle with Ann Margarett Curl; and (3) a 21-second video depicting a brown and black dog being ordered and performing oral sex on a human female.[6]

On December 15, 2023, Sgt. Antal conducted a recorded interview with Ann Curl.[7] During the interview, Sgt. Antal confirmed that the phone number ██████ ███ belonged to Ann Curl and that she has a Verizon account. While questioning

---

[3] Ex. C at 5.
[4] Exhibit D (MSP Report 1-18-2024).
[5] Ex. A.
[6] Ex. D.
[7] Exhibit E (MSP Report 1-25-2024).

Ann Curl, Sgt. Antal explained how her phone was identified as the source of the child pornography that was uploaded to the Synchronoss Technologies, Inc. account.

> **Sgt. Antal**: So basically what happens is people go online, they look up stuff that they shouldn't be looking up, the things are flagged, and then it gets sent to a sorting center, and then it comes to us to follow up and do the investigation on it. So your phone number, what is your phone number?

> **Ann Curl**: ████████

> **Sgt. Antal**: And who is the carrier?

> **Ann Curl**: Uhh Verizon.

> **Sgt. Antal**: Are you the account holder or is somebody else the account holder?

> **Ann Curl**: No, my girlfriend is.

> **Sgt. Antal**: Ok. Its ██████ ?

> **Ann Curl**: mmhm.

> **Sgt. Antal**: Alright. Do you know how, do you know what Synchronoss is?

> **Ann Curl**: No.

> **Sgt. Antal**: So when you take pictures with your phone, do stuff with your phone, it goes in to the cloud so its kind of like…

> **Ann Curl**: Yup

> **Sgt. Antal**: …Verizon's cloud. So everything you save goes to the cloud. ***So one of the photos that you viewed on your phone was flagged and got saved to your cloud and that was sent to us.*** I've done a search warrant on your cloud and have gotten all the videos and photos out of there.[8]

---

[8] Exhibit B (Ann Curl Recorded Interview) at 3:33 − 4:44 (emphasis added). The above transcript is based on Counsel's review of the recorded interview and efforts to transcribe the audio. To the extent to Court finds a discrepancy between the quotations and the video, it is the video recording that captures the actual words spoken.

Sgt. Antal took custody of Ann Curl's cell phone and sought a search warrant to access its contents.

On December 18, 2023, Sgt. Antal authored a search and seizure warrant for the contents of Ann Curl's cell phone.[9] In support of the request for a search warrant, Sgt. Antal stated the following as the bases for probable cause to conduct the requested search:

- On October 23, 2023, the Maryland State Police – Criminal Enforcement Division received CyberTipline Report 174159826 from the National Center for Missing and Exploited Children (NCMEC).

- The complaint was made by Synchronoss Technologies, Inc. who provided NCMEC with the following information:

    On September 15, 2023 at 21:06:11 UTC, an image was uploaded to Verizon Synchronoss Technologies account utilizing the phone number ███████ one image depicting suspected Child Sexual Abuse Material (CSAM) was uploaded to a Synchronoss Technologies, Inc. account with the phone number ███████.

- Your Affiant reviewed the attached media and determined that one image depicted CSAM as defined by Maryland Law and can be described as the following:

    Image #1 depicts one female believed to be under the age of 8, fully nude in a sexual position on a bed engaging in oral sex with an adult male erect penis.

- On November 29, 2023, Your Affiant, authored a search and seizure warrant for the data stored electronically associated with the Synchronoss Technologies, Inc, account number ███████, which was signed by the Honorable Judge William Jones of the Circuit Court of Dorchester County of Maryland. Synchronoss Technologies, Inc, provided Your Affiant with the digital content of that account which contained the following:

--------

[9] Exhibit F (Search Warrant for Samsung Cellphone Serial Number ███████ 12-18-2023)

Picture #1: Picture of State of Maryland driver license with the information relating to Ann Margret Curl, DOB ███████, F, ████, ██████, Customer Identifier ████████████.

Picture #2: Picture depicting a brown and black dog preforming oral sex on a human female.

Picture #3: Picture depicting a brown and black dog sitting in a vehicle with Ann Margaret Curl

Video #1: 41 second video depicting a brown and black dog being ordered and preforming oral sex on a human female.

- On December 15, 2023 I conducted a recorded interview with Ann Margret Curl. Curl confirmed that the phone number ████████ was hers and that she has a Verizon account. During the interview Curl was asked about the video recorded of the dog preforming oral sex on a female. Curl stated that was a "stupid thing to do" and stated that she did it because she was curious. Your Affiant asked Curl for her cellphone and she handed Your Affiant a purple Samsung cellphone with serial number ██████████. Curl also provided the passcode to unlock the phone.

- Your Affiant knows through knowledge, training, and experience those individuals involved in acts such as the possession and distribution of child pornography often utilize cellular telephones to communicate with potential victims of sexual solicitation, or those in cooperation with their efforts, via voice, text/SMS, and networking applications such as Snapchat.

- Your Affiant knows through knowledge, training, and experience those individuals involved in the possession and distribution of child pornography often obtain and distribute child pornography with other individuals, with the same intentions, utilizing text/SMS, and networking applications such as Facebook.

- Your Affiant knows through knowledge, training, and experience those individuals involved in acts such as the possession and distribution of child pornography often store media, to include photographs and videos, on cellular telephones and/or cloud storage, of an illegal nature to include child pornography or illicit media pertaining to minors.

- Your Affiant knows through knowledge, training, and experience that evidence pertaining to crimes such as the possession and distribution of child pornography can be stored from cellular devices or computers and retained

via cloud services and retrieved by trained and qualified persons from cellular telephones and data storage.

The search warrant as granted, authorizing a search of the Ann Curl's cellphone for certain data, and utilizing certain techniques, for the time period between September 15, 2023 to present.[10]

Sgt. Antal later authored additional search and seizure warrants on January 11, 2024, and February 28, 2024, seeking approval for a more in-depth examination of Ms. Curl's cell phone using advanced tools.[11] In the February 28, 2024 search warrant application, Sgt. Antal discussed additional investigative findings based on their recent searches of Ann Curl's cell phone:

- On December 20th, 2023, your Affiant authored and executed a search and seizure warrant for the purple Samsung cellphone with serial number ▮▮▮▮▮▮▮ While analyzing the data from the cellular device two photos were observed and are described as the following:



- Your Affiant observed during the execution of the search warrant of the cellular device a folder labeled "secure folder. This folder was password protected and the equipment that was being used to extract the data could not enter eth folder and extract the date. Your affiant spoke to investigators with Computer Crimes who informed your Affiant that they have advance tools to extract the data from the secure folder, which will allow your affiant to preview the data held in

---

[10] Ex. F.
[11] Exhibit G (Search Warrant of Samsung Cellphone Serial Number ▮▮▮▮▮▮ 1/11/2024); Exhibit H (Search Warrant of Samsung Cellphone Serial Number ▮▮▮▮▮▮ 2-28-2024).

the folder and search for any child pornography or child abuse material.[12]

The search warrant was granted, and Sgt. Antal continued his investigation into Ann Curl and the contents of her cellphone.

## C. Investigators identifed an email address associated with James Howeth and decided to search his home.

Given the progression of the investigation, investigators had identified the source of the reported child pornography uploaded to the Verizon Synchronoss account: Ann Margeret Curl. Investigators identified her cellphone number (█████████) as the source of the upload; conducted a search of her Verizon Synchronoss account and found, among other things, her driver's license; and interviewed her to confirm that was her cell phone number and that she has a Verizon account. Indeed, Sgt. Antal told Ann Curl that "one of the photos that you viewed on your phone was flagged and got saved to your cloud and that was sent to us."[13] Based on the investigation, Sgt. Antal obtained multiple warrants to search the contents of Ann Curl's cell phone.

On March 13, 2024, Sgt. Antal submitted another application for a search warrant. This time, he was requesting authorization to search the following premises: █████████████████████████████████████████.[14] The search warrant sought to seize and analyze:

---

[12] Ex. H.

[13] Ex. B at 4:28 − 4:36.

[14] Exhibit I (Search Warrant for ████████████████████████ 3-13-2024).

computers, laptops, cellular telephones, tablets, video gaming consoles, digital cameras, any time that can be utilized for storing electronic data to include by not limited to: compact disks, DVDs, floppy disks, USB flash drives, hard drives (internal external), and media (physical photographs and videos) that contain child pornography, and additional evidence related to CR 1-208: possession of child pornography and related charges.[15]

Given the investigator's findings, one may expect that the search warrant was for Ann Curl's residence. It was not. It was for the residence of James Howeth. The probable cause affidavit submitted by Sgt. Antal largely mirrored the affidavits that he had previously submitted. The affidavit also included the following information:

- On December 20th, 2023, your Affiant authored and executed a search and seizure warrant for the purple Samsung cellphone with serial number ███████████ While analyzing the data from the cellular device two photos were observed and are described as the following:



- On February 29th, 2024 Your Affiant had the Maryland State Police Computer Crimes execute a search and seizure warrant for the cellular device using advance forensics. During their examination they determined that the email address ██████████████ is the email address associated with a James Edward Howeth. Through investigations conducted by your Affiant it was discovered that James Howeth listed that email address as his email address with the ██████████████ system. Through the investigation Your Affiant has learned that Ann Curl and James Haweth have a romantic relationship. Additionally, James Howeth listed Ann Curl on a ██████████████ contact list as a emergency contact.

---

[15] *Id.*

- A search of the Motor Vehicle Administration database showed an address of ████████████████████████████ for James Howeth. Additionally, James Howeth used that address as his residence with the ████████████████████.

- Your Affiant knows through knowledge, training, and experience those individuals involved in the possession of child pornography often obtain and maintain collections of this material on various types of electronic devices, such as cellular telephones, computers, tablets, gaming consoles. The individual is able to store, conceal, and access large amounts of data relating to child pornography in this way.

- Your affiant knows through knowledge, training, and experience those individuals involved in the possession of child pornography often store this material on various types of electronic storage devices such as compact disks, DVDs, floppy disks, USB flash drives, hard drives (internal/external), due to the ability to easily store and conceal these items to evade detection from those around them and from law enforcement.

- Your Affiant knows that various electronic devices can be seized by investigators to further their investigations. The data that are contained within these electronic devices can be retrieved by trained and qualified law enforcement personnel to confirm or rule out the further possession of child pornography. This can also determine if the individual is involved in the distribution or manufacturing of child pornography.

Based on this information, a Dorchester County Circuit Court Judge found probable cause to believe that at Mr. Howeth's home (including any and all curtilage, outbuildings and vehicles on said property), "there is now being concealed certain property, namely computers, laptops, cellular telephones, tablets, video gaming consoles, digital cameras, any time that can be utilized for storing electronic data to include by not limited to: compact disks, DVDs, floppy disks, USB flash drives, hard drives (internal external), and media (physical photographs and videos)

that contain child pornography, and additional evidence related to CR 11-208: Possession of Child Pornography, and related charges."[16]

**D. During execution of the search warrant, law enforcement searched the contents of various electronic devices prior to obtaining a search warrant for specific electronic devices.**

In the early morning hours of March 14, 2024, the Maryland State Police, together with the Digital Forensic Laboratory, executed a search and seizure warrant at Mr. Howeth's residence. During the execution of the warrant, law enforcement officers interrogated Mr. Howeth and searched the contents of several electronic devices. Notably, the search of these devices took place prior to law enforcement seeking and obtaining a separate search and seizure warrant for the electronic devices.[17]

Mr. Howeth moves to suppress all tangible and derivative evidence stemming from the search warrant execution of his home. Suppression is warranted because the search warrant affidavit failed to establish the required nexus between Mr. Howeth's residence, and the suspected criminal activity. Absent the required nexus, the search warrant was without probable cause to authorize the search. As a result, the search warrant was constitutionally defective.

Additionally, suppression is warranted because Sgt. Antal omitted material facts intentionally or, at the very least, with reckless disregard about whether it would mislead the Dorchester County judge into believing that Ann Curl resided at

---

[16] Ex. I.
[17] Exhibit J (Search Warrant for Electronic Devices 3-19-2024).

Mr. Howeth's residence. The inclusion of Ann Curl's residential address information would have made clear that Ann Curl does not reside with Mr. Howeth, thus defeating any probable cause to believe that evidence of suspected criminal activity would be found at Mr. Howeth's residence. For that reason, suppression is warranted under *Franks*.

Finally, suppression is warranted because the search warrant for Mr. Howeth's residence failed to meet the Fourth Amendment's particularity requirement. The search warrant purportedly authorized law enforcement to conduct unfettered forensic searches of electronic devices found at the residence. Because the search warrant does not place any limits to the scope or nature of any such search, it authorized the same "wide-ranging" and "exploratory rummaging" that the Fourth Amendment prohibits. *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). For that reason, the search was unconstitutional.

## Argument

### I.    The search warrant affidavit fails to establish the required nexus between Mr. Howeth's home and suspected criminal activity.

"The Fourth Amendment protects individuals from 'unreasonable searches and seizures,' and provides that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *United States v. Drummond*, 925 F.3d 681, 686 (4th Cir. 2019), *abrogated on other grounds as recognized by United States v. Canada*, 103 F.4th 257 (4th Cir. 2024). "Probable cause determinations require a practical, common-sense decision, based on sworn facts, whether there is a

fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Lyles*, 910 F.3d 787, 791 (4th Cir. 2018) (quoting Illinois v. Gates, 462 U.S. 213, 218 (1983)).

Probable cause is both location specific and crime specific: a magistrate may not approve a warrant unless she has "a substantial basis for concluding that probable cause exist[s] to search a particular place for evidence of a specific crime." *United States v. Jones*, 952 F.3d 153, 158 (4th Cir. 2020) (emphasis added). Put differently, "[r]egardless of whether an individual is validly suspected of committing a crime, an application for a search warrant concerning his property or possessions must demonstrate cause to believe that evidence is likely to be found at the place to be searched" and there must be a "nexus . . . between the item to be seized and criminal behavior." *United States v. Griffith*, 867 F.3d 1265, 1271 (D.C. Cir. 2017) (quoting *Groh v. Ramirez*, 540 U.S. 551, 568 (2004); *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967)); *United States v. Wilson*, 2025 WL 2490719, at *4 (5th Cir. Aug. 29, 2025) (noting that for a search warrant to comply with the Fourth Amendment, it " 'must establish a nexus between the house to be searched and the evidence sought" – either by 'direct observation or through normal inferences as to where the articles sought would be located.' ") (quoting *United States v. Payne*, 341 F.3d 393, 400 (5th Cir. 2003)); *Burns v. United States*, 235 A.3d 758, 771 (D.C. 2020) ("The affidavit thus must demonstrate cause to believe not only that an item of evidence is likely to be found at the place to be searched, but also that there is a

nexus between the item to be seized and the criminal behavior under investigation."
(quoting *Griffith*, 867 F.3d at 1271) (brackets omitted)).

The determination of whether probable cause exists is based on the facts set
forth in the four corners of law enforcement's sworn affidavit, and "[w]holly
conclusory statements . . . ordinarily will not suffice." *United States v. Villapando*,
No. ELH-16-159, 2017 WL 1277491, at *11 (D. Md. Apr. 5, 2017) (citing *Owens v.
Lott*, 372 F.3d 267, 277 (4th Cir. 2004); *Gates*, 462 U.S. at 239).

There are a wealth of cases, both in the Fourth Circuit and outside the
Fourth Circuit, and both in cases involving searches of homes and other locations,
that demonstrate the fundamental tenet that an application for a search warrant
must demonstrate probable cause to believe that evidence is likely to be found at
the place to be searched *and* that a nexus must exist between the item to be seized
and the specific criminal behavior under investigation.

Take, for example, *United States v. Lalor*, 996 F.2d 1578 (4th Cir. 1993), a
Fourth Circuit case involving the search of a defendant's home. There, the Fourth
Circuit held a warrant invalid due to a lack of nexus to alleged drug activity in the
defendant's residence. The warrant to search the home in that case was based on
information from two confidential informants who told police that the defendant
was selling drugs on certain streets near his residence. *Id.* at 1579-80. The Fourth
Circuit explained that the affidavit did not "describe circumstances that indicate
such evidence [of drug activity] was likely to be stored at [the defendant's]
residence." *Id.* at 1582. And because there was no "information link[ing] the

criminal activity to the defendant's residence," the Fourth Circuit held that the warrant was defective. *Id.* at 1583; *see also*, *e.g.*, *id.* ("[R]esidential searches have been upheld only where some information links the criminal activity to the defendant's residence."); *United States v. McPhearson*, 469 F.3d 518, 524-25 (6th Cir. 2006) (warrant defective because the affidavit did not "support the inference that evidence of wrongdoing would be found in [the defendant's] home because drugs were found on his person"); *United States v. Brown*, 828 F.3d 375, 382-85 (6th Cir. 2016) (warrant defective because the supporting affidavit "contained no evidence that [the defendant] distributed narcotics from his home, that he used it to store narcotics, or that any suspicious activity had taken place there"); *United States v. Brown*, 567 F. App'x 272, 281-84 & n.7 (5th Cir. 2014) (affidavit contained "no" evidence linking the defendant's drug trafficking to his home, only a bare statement that officers "believed" that drugs were located there); *United States v. Powers*, 1 F. Supp. 3d 470, 474-75 (M.D.N.C. 2014) ("There are no facts connecting the residence to evidence related to a robbery, and there is no probable cause to search the residence for evidence related to the robbery.").

Take, as another example, *United States v. Doyle*, 650 F.3d 460 (4th Cir. 2011), a separate Fourth Circuit case involving a search of a defendant's residence. There, the Fourth Circuit held that probable cause did not exist to justify a search of the home for child pornography, even though the search warrant affidavit presented evidence of child molestation and possession of nude images of children. The Fourth Circuit explained, "There is, however, remarkably scant evidence in the

affidavit (or Rouse's investigation summary) to support a belief that Doyle in fact possessed child pornography. The bulk of the information supplied in the affidavit concerned allegations of sexual assault. But evidence of child molestation alone does not support probable cause to search for child pornography." *Id*. at 472.

*United States v. Wilson*, 2025 WL 2490719 (5th Cir. Aug. 29, 2025), offers a more recent example of federal district and appellate courts suppressing evidence where the search warrant fails to establish the requisite nexus between the place to be searched and the suspected criminal activity. In *Wilson*, the defendant was being investigated for displaying a firearm during a verbal dispute with another individual at a Waffle House restaurant. 2025 WL 4290719, at *2. Two weeks later, investigators sought an arrest warrant for the defendant, and a search warrant for his residence to seize evidence connected to the Waffle House incident. *Id*. The search warrant was granted, and it resulted in officers discovering ammunition, marijuana, and a firearm. *Id*. at *3. In granting the defendant's motion to suppress, the district court found that the affidavit "offered no nexus between the assault at the Waffle House and the search of the residence" and was "so lacking in indicia of probable cause as to render official belief in the existence entirely unreasonable." *Id*.

The Fifth Circuit affirmed the suppression order, finding that "the affidavit was 'so lacking in indicia of probable cause' – so bereft of any factual connection to the place searched – that it was unreasonable for officers to believe probable cause existed." *Id*. at *4. Despite seeming to agree that offers likely had probable cause to

arrest the defendant, the Fifth Circuit carefully explained the material difference between probable cause to arrest and probable cause to search.

> [T]he fact that there is probable cause to believe that a person has committed a crime does not automatically give the police probable cause to search his house for evidence of that crime.' One concerns the person; the other concerns the place. And the Constitution demands a factual bridge between the two. 'Freedom in one's own dwelling is the archetype of the privacy protection secured by the Fourth Amendment.' Consistent with the 'centuries-old principle' that the 'home is entitled to special protection,' we have deemed affidavits bare bones when they 'provide no information linking the [criminal] investigation to [the defendant's] residence.' This affidavit is no different. It alleged no suspicious activity at or near 212 Central, and its lone, unexplainable assertion that officers 'believed' contraband was 'located at [Wilson's] residence' is far too thin to make probable cause reasonable. Speculation about what might be found at a residence cannot satisfy the Fourth Amendment.

*Id.* at *4 (internal citations omitted).

In this case, the affidavit for the warrant to search Mr. Howeth's home failed to establish a sufficient nexus to believe evidence of criminal activity (namely, child pornography-related offenses) would be found there. According to the affidavit, investigators learned that an image of suspected child pornography was uploaded to a Verizon Synchronoss Technologies account using cell phone number ███████ – a cell phone that investigators learned belongs to Ann Curl. Ann Curl's driver's license information and other images and videos of Ann Curl were found in the Verizon Synchronoss account. Investigators located Ann Curl, interviewed her, secured her cell phone, and searched its contents.

It was during the search of Ann Curl's cell phone that investigators identified the ███████ email address associated with Mr. Howeth. Investigators made this connection by reviewing ███████ records. These records

listed Ann Curl as an emergency contact, and listed Mr. Howeth's address as ████ ████████████████████████████████████████████████ ████ [18]

Importantly, there were no facts contained in the affidavit to suggest that Ann Curl lives at ██████████████████████ For good reason: she doesn't live there. The same ██████ records that identified Ann Curl as an emergency contact listed her address as ██████████████████████████████ [19] That address was familiar to investigators because it is the same address identified in the NCMEC Cybertip. Ann Curl's residential address and Mr. Howeth's residential address are located a significant distance from each other:



---

[18] Investigators also learned that this address was associated with Mr. Howeth from a review of Motor Vehicle Administration records.
[19] The referenced ██████ records are contained in discovery at Bates No. 00494–00495.

While the affidavit made a connection between Mr. Howeth's home address and the ███████████████████ the Fourth Amendment requires a specific type of connection: a nexus between the place to be searched and the items to be seized. And the affidavit failed to establish a nexus between Mr. Howeth's residence and the suspected child pornography-related activity.

Instead, at most, the affidavit established that Ann Curl was suspected of engaging in criminal activity, and her cell phone was suspected of maintaining evidence of it. That is why investigators sought and obtained multiple search warrants for her cell phone. But any suspicion about Ann Curl and suspected criminal activity on her cell phone is not imputed upon Mr. Howeth, let alone his residence. If mere association isn't enough to justify an investigatory stop, *see United States v. Black*, 707 F3d 531, 539 (4th Cir. 2013), its unclear how the Government expects it to justify probable cause to search a residence. *See also Ybarra v. Illinois*, 444 U.S. 84, 91 (1979 ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person."). That is particularly true when probable cause to arrest a person is ***not*** the same as probable cause to search a location. *See* Wilson, 2025 WL 2490719, at *4 (carefully explaining this distinction).

The affidavit in this case simply failed to provide the necessary bridge between the suspected criminal activity and Mr. Howeth's residence. Without that bridge, there was no probable cause to believe that evidence of the suspected criminal activity existed at Mr. Howeth's residence. Rather, at most, the

investigators only had reason to believe that evidence of the suspected criminal activity would be found at Ann Curl's residence, especially because it was only her residence that was explicitly identified in the NCMEC Cybertip. But the affidavit that led to the search warrant of Mr. Howeth's residence offered nothing to link the residence with evidence of suspected child pornography-related activity.  And surely, that Ann Curl was listed as an emergency contact was not enough to establish that nexus.  For this reason, the resulting search violated the Fourth Amendment. As a result, the evidence should be suppressed.

## II.    The search warrant affidavit omits material facts known to investigators that would have defeated any probable cause to search Mr. Howeth's residence.

In drafting the search warrant affidavit, Sgt. Antal omitted material facts that would have defeated any probable cause to search Mr. Howeth's home. The Supreme Court has established that a criminal defendant has a right, under certain circumstances, to challenge the veracity of statements made in an affidavit in support of a search warrant. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Under *Franks*, a defendant may challenge a search warrant affidavit that contains a false statement or omits material facts. *See United States v. Wharton*, 840 F.3d 163, 168 (4th Cir. 2016).

To establish a *Franks* violation based on information omitted from the affidavit, a defendant must make a "substantial preliminary showing" that: (1) "law enforcement made an omission"; (2) "law enforcement made the omission 'knowingly and intentionally, or with reckless disregard for the truth' "; and (3) the inclusion of

the omitted evidence would have defeated its probable cause." *United States v. Haas*, 986 F.3d 467, 474 (4th Cir. 2021) (quoting *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990)). "If after the hearing the defendant establishes 'perjury or reckless disregard' by a preponderance of the evidence and shows that the inclusion of the omitted evidence would defeat the probable cause in the affidavit, 'the search warrant must be voided and the fruits of the search excluded.' " *Haas*, 986 F.3d at 474 (quoting *Franks*, 438 U.S. at 156).

In the search warrant affidavit for Mr. Howeth's residence, Sgt. Antal noted that Ann Curl was in a romantic relationship with Mr. Howeth; was listed as an emergency contact on a ███████████████████ contact list; and that MVA and ███████████████ records listed Mr. Howeth's address as ████████████ ███████████████████████████.[20] Despite knowing Ann Curl's residential address (and knowing that it was not the same as Mr. Howeth's residential address), Sgt. Antal omitted it from the affidavit. The omission was intentional or, at the very least, done with reckless disregard about whether it would mislead the judge into believing that Ann Curl resided with Mr. Howeth at the ██████████████████. This is a material omission that would have eliminated any purported connection between Mr. Howeth's residence and the suspected criminal activity.

---

[20] Ex. I.

### 1.  Sgt. Antal omitted information from the search warrant affidavit – namely, that Ann Curl was the source of the child pornography uploaded to the Synchronoss cloud, and Ann Curl's residential address.

Sgt. Antal omitted two material facts from the search warrant affidavit. First, Sgt. Antal did not report that, based on his investigation, the child pornography image was uploaded to the Synchronoss cloud because Ann Curl viewed it on her phone. *See* Ex. A (phone number geo-lookup identifying Ann Curl as the suspect); Ex B at 4:28 – 4:36 (Sgt. Antal explaining to Ann Curl that "one of the photos that you viewed on your phone was flagged and got saved to your cloud and that was sent to us.").

Second, Sgt. Antal omitted Ann Curl's residential address from the search warrant affidavit. Sgt. Antal was fully aware of Ann Curl's residential address prior to submitting the application to search Mr. Howeth's home. And Sgt. Antal learned this material information from critical pieces of evidence that he relied upon during his investigation. For example, Sgt. Antal reviewed the NCMEC Cybertip that initially prompted the investigation and used it to support multiple search warrants that he authored in this case.[21] That NCMEC Cybertip report includes phone number geo-lookup information. The NCMEC Cybertip report explains how the geo-lookup information is obtained:

---

[21] *See* Exs. C, F, G, I.

| Explanation of Automated Information (in alphabetical order) |
| --- |
| **Geo-Lookup:** When a reporting party voluntarily reports an IP address and/or phone number, NCMEC Systems will geographically resolve the IP address and/or phone number via publicly-available online queries. The results of the lookups are displayed below.<br><br>Geolocation data is approximate and may not display a user's exact location. Please be aware that the geolocation information provided is not exact but is providing a reliable estimate of location based on identifiers voluntarily provided by the reporting party. |

In this NCMEC Cybertip report, Ann Curl is identified by name, phone number, and residential address. Information that was reviewed by Sgt. Antal.

| Phone Number Geo-Lookup (Suspect) | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Phone Number | Queried Number | First Name | Last Name | Address | City | State | Postal Code | Carrier | Phone Type |
| ▮ | ▮ | ANN | CURL | ▮ | ▮ | ▮ | ▮ | Verizon Wireless | Wireless |

Additionally, Sgt. Antal reviewed Ann Curl's driver's license information, which included her residential address information. As noted in the search warrant affidavit, Sgt. Antal obtained information about data stored electronically with the Synchronoss Technologies, Inc., account number ▮ [22] That information included a "[p]icture of State of Maryland driver license with the information relating to Ann Margeret Curl, DOB ▮, F, ▮ ▮, Customer Identifier ▮ "[23] MVA records confirm that the residential address registered with the MVA is ▮ ▮ [24] The residential information on the driver's license was reviewed by Sgt. Antal.

---

[22] Ex. I.
[23] *Id.*
[24] Exhibit L (Ann Curl MVA Driving Record).

Finally, Sgt. Antal reviewed the ███████████████ records that listed Ann Curl as an emergency contact. Those same records, which are contained in discovery, identified Ann Curl's residential information. The records made clear that Mr. Howeth's address was different than Ann Curl's address:

██████████████████████████████████████████████

Based on his investigation, Sgt. Antal determined that Ann Curl was the source of the child pornography image that was uploaded to the Synchronoss cloud and initiated this investigation, and that she resided at ██████████████ ████████████████ Both facts were omitted from the search warrant affidavit. Thus, the first prong of the *Franks* analysis is satisfied.

### 2. Sgt. Antal omitted these facts intentionally, or with reckless disregard about whether it would mislead the judge.

To establish this prong of the *Frank* analysis, Mr. Howeth must show by a preponderance of the evidence that Sgt. Antal "omitted information with the intent to mislead the magistrate or that he omitted the information with reckless disregard of whether it would make the affidavit misleading." *United States v. Lull*, 824 F.3d 109, 115 (4th Cir. 2016). At a bare minimum, the evidence demonstrates that Sgt. Antal omitted this information with reckless disregard of whether it would make the affidavit misleading.

Early into the investigation, Sgt. Antal quickly identified Ann Curl as the source of the child-pornography related offenses stemming from the NCMEC Cybertip report. A photograph of Ann Curl's driver's license and photo and video files depicting Ann Curl engaging in apparent bestiality were recovered from the Synchronoss Technologies, Inc. for account number ███████.[25] Sgt. Antal interviewed Ann Curl, confirmed that her phone number is ███████ and that she has a Verizon account; and seemingly confirmed her participation in the video of a dog performing oral sex on a female.[26] Sgt. Antal told Ann Curl that "one of the photos that you viewed on your phone was flagged and got saved to your cloud and that was sent to us."[27] Sgt. Antal confiscated her phone, and sought multiple warrants to search its contents.

It is against this backdrop that we can understand how the omission of this information was done with reckless disregard about whether it would make the affidavit misleading. At the time Sgt. Antal sought a warrant to search Mr. Howeth's residence, there was significant investigation into a potential source of the suspected criminal activity. That source was Ann Curl. And despite having reviewed multiple sources of information that identified Ann Curl's residential address – including the NCMEC Cybertip report – Sgt. Antal omitted this fact from the search warrant affidavit.

---

[25] Ex. I.
[26] *Id.*
[27] Ex. B at 4:28 – 4:36.

Instead of providing the magistrate judge with Ann Curl's residential address, Sgt. Antal framed the affidavit in a way to lead the magistrate judge into believing that Ann Curl resided with Mr. Howeth. For example, Sgt. Antal noted that Ann Curl was in a relationship with Mr. Howeth and was listed as an emergency contact in ███ records.[28] Notably, Sgt. Antal included the residential address listed for Mr. Howeth in both the MVA and ██████ records.[29] As noted above, both sources also included Ann Curl's residential address information. Sgt. Antal decided not to include it.

If the judge believed that Ann Curl – the source of the child pornography that triggered this investigation – resided at the ████████ address, one could see why the judge would find probable cause to search that residence. If the judge knew that Ann Curl resided at an address in a different county approximately 40 miles away, there would be no probable cause to search Mr. Howeth's residence. Sgt. Antal's decision to omit this information was intentional, or, at a bare minimum, done with reckless disregard to whether it would mislead the magistrate judge to believe that Ann Curl resided with Mr. Howeth at the residence that was the target of the search warrant. This satisfies the second prong of the *Franks* analysis.

---

[28] Ex. I.
[29] *Id.*

### 3. Ann Curl's residential address information would have defeated any probable cause to search Mr. Howeth's residence.

An omission is material if it is "necessary to the [neutral and disinterested magistrate's] finding of probable cause." *Franks*, 438 U.S. at 156. In the context of omissions, such facts are material if "inclusion of the omitted evidence in the affidavit would have defeated its probable cause." *Haas*, 986 F.3d at 474 (citing *Colkley*, 899 F.2d at 300 - 01).

As discussed above, the search warrant affidavit fails to establish the requisite nexus between the suspected criminal activity and Mr. Howeth's residence. Without that specific type of connection, there is no probable cause to believe that evidence of suspected criminal activity would be found at the location.

That connection might be found, however, if the magistrate judge believed that Ann Curl resided with Mr. Howeth at the target location. Sgt. Antal's affidavit omits pertinent information with reckless disregard about whether it would mislead the judge into believing that Ann Curl resided with Mr. Howeth. If the search warrant affidavit would have included Ann Curl's residential address information and the source of that information (NCMEC Cybertip report, photocopy of Ann Curl's driver's license found in the contents of the Synchronoss Technologies, Inc., account; and ███████████████ records), then the magistrate judge would have understood that there was an insufficient nexus between the suspected criminal activity and Mr. Howeth's residence. Inclusion of this information would

have defeated probable cause. For that reason, the third prong in the *Franks* analysis is satisfied.

Mr. Howeth has demonstrated that Sgt. Antal omitted material facts from the search warrant affidavit intentionally, or with reckless disregard about whether it would mislead the magistrate judge. Because Mr. Howeth has established a *Franks* violation, the search warrant is void and the fruits of its search must be suppressed.

### III.    The search warrant fails the particularity requirement.

The final clause of the Fourth Amendment establishes a "particularity requirement" to search warrants. *See* U.S. Const. amend. IV ("no Warrants shall issue, but upon probable cause, supported by oath or affirmation, ***and particularly describing the place to be searched, and the persons or things to be seized***.") (emphasis added). The Framers included this provision to end the practice, "abhorred by the colonists," of issuing "general warrants." *United States v. Dargen*, 738 F.3d 643, 647 (4th Cir. 2013) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443 467 (1971)). The purpose of the particularity requirement is to ensure that "the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). For that reason, "a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (internal quotation and citation omitted).

The particularity requirement is satisfied when "the warrant identifies the items to be seized by their relation to designated crimes and when the description of the items leaves nothing to the discretion of the officer executing the warrant." *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010) (citing *Andresen v. Maryland*, 427 U.S. 463, 480-82 (1976); *see also United States v. Oleyede*, 982 F.2d 133, 138 (4th Cir. 1992) (noting that the particularity requirement "ensures that he search is confined in scope to particularly described evidence relating to a specific crime for which there is probable cause").

In this case, the search warrant purported to authorize a search of electronic devices that is not limited in scope or officer discretion. The search warrant listed certain property subject to seizure, namely:

> Computers, laptops, cellular telephones, tablets, video gaming consoles, digital cameras, any time that can be utilized for storing electronic data to include but not limited to: compact disks, DVDs, floppy disks, USB flash drives, hard drives (internal/external), any media (physical photographs and videos) that contain child pornography, and additional evidence related to, CR 11-208: Possession of Child Pornography, and related charges.[30]

The warrant did not only permit the seizure of this property, it allowed officers to search their contents. The warrant states "YOU ARE COMANDED, to make entry with necessary and proper assistance, to fortwith search the above-described premises (to include any and all cartilage and outbuilding) for the property specified herein, executing this Warrant and making the search, and if such property be found there, ***to seize, preview, and analyze it***..."[31] And law

---

[30] Ex. I.
[31] *Id.* (emphasis added).

enforcement took full advantage of this provision when, during the execution of the search warrant, they searched the contents of multiple electronic devices.[32]

This search provision was not limited in scope or methodology. It did not offer guidelines to officers on how comprehensive or narrow the search of an electronic device may be. It did not identify or limit the use of any forensic tools, and it did not define what it means to "preview" or "analyze" an electronic device.

Law enforcement took full advantage of this unfettered search provision. They arrived at Mr. Howeth's residence with members of their computer crimes forensic team to conduct forensic searches of electronic devices. Sgt. Antal told Mr. Howeth "so what's going to kind of happen now is, so the I don't know if you saw, so there's two troopers here that are with our computer crimes forensic team. So there is a special van out front that is going to download your phone."[33] After interrogating Mr. Howeth, Sgt. Antal reentered the home and appeared to be speaking with one of the members of the computer crimes forensic team.[34] The computer crimes forensic examiner confirmed with Sgt. Antal that he was able to successfully log into a computer and laptop.[35] He also confirmed with Sgt. Antal that another examiner (Lyles) "is in the van taking a look at the phones right now and I'm working on these computers right now…"[36]

---

[32] *See, e.g.*, Ex. J (noting that "Your Affiant previewed James Howeth's cellular device during the execution of the search warrant revealed ████████████████████████████ ████).
[33] Exhibit K (Sgt. Antal BWC) at $25:04 - 25:20$.
[34] Ex. K at 1:04:57.
[35] Ex. K at $1:04:57 - 1:05-10$.
[36] Ex. K at $1:05:51 - 1:05:57$.

The search warrant provided law enforcement with unfettered discretion to conduct forensic examinations of electronic devices. As a result, it authorized the same "wide-ranging" and "exploratory rummaging" that the Fourth Amendment prohibits. *Garrison*, 480 U.S. at 84. For that reason, the search warrant fails to satisfy the particularity requirement, thereby rendering the search unconstitutional.

## Conclusion

For the reasons provided above, the Court should suppress all tangible and physical evidence stemming from the search of Mr. Howeth's residence.

Respectfully submitted,
James Wyda
Federal Public Defender
   for the District of Maryland

___/s/_____
Francisco A. Carriedo (#816158)
Assistant Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland  21201
Phone: (410) 962-3962
Fax:  (410) 962-0872
Email: Francisco_Carriedo@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2025, a copy of the foregoing was served via CM/ECF to the Government.

_____/s/_____
Francisco A. Carriedo